UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SETH MANHEIMER, | Case No. 2:16-CV-2186 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| TRUFUSION YOGA, LLC, et al., | |
| Defendant(s). | |
| AND RELATED COUNTERCLAIM | |

Presently before the court is a joint motion to dismiss filed by defendants TruFusion Yoga, LLC ("TFY"), Michael Borden ("Borden"), Martin Hinton ("Hinton"), TruFusion LLC ("TF"), and TruFusion Franchising LLC ("TFF") (collectively, as "defendants"). (ECF No. 38). Plaintiff Seth Manheimer ("plaintiff" or "Manheimer") filed a response (ECF No. 44), to which defendants replied (ECF No. 45).

Also before the court is plaintiff's motion to dismiss. (ECF No. 55). TFY, TF, and TFF (collectively, as "counterclaimants") filed a response (ECF No. 56),[1] to which plaintiff replied (ECF No. 57).

. . .

. . .

---

[1] As an initial matter, counterclaimants incorrectly filed their response (ECF No. 56) as a response to plaintiff's earlier-filed motion to dismiss (ECF No. 41) rather than plaintiff's later-filed motion to dismiss (ECF No. 55). However, the court will construe counterclaimants' response (ECF No. 56) as a response to plaintiff's later-filed motion to dismiss (ECF No. 55).

James C. Mahan
U.S. District Judge

I.      **Facts**

TruFusion Yoga ("TFY") provides fitness classes in the Las Vegas area.  TFY owns federal trademarks related to the TruFusion brand.  (ECF No. 24 at 13).  Steven Gregory ("Gregory"), Judiah Hoffman ("Hoffman"), and Jeff Starr ("Starr") formed TFY on March 20, 2013.  (ECF No. 24 at 6).  Gregory dealt with organizational needs; Hoffman dealt with operational needs; Starr was the primary financier.  (ECF No. 24 at 6).

In June 2013, Borden purchased Starr's membership interest in TFY and plaintiff purchased a 1% interest in TFY.  In July 2013, Borden, Hoffman, Gregory, Hinton and plaintiff entered into an operating agreement, which gave managers the authority to act on behalf of TFY.  (ECF No. 24 at 7).

Plaintiff alleges that during March through May of 2014, TFY bought Gregory's and Hoffman's interests in TFY.  (ECF No. 24 at 9).  Thereafter, plaintiff and Borden discussed restructuring the ownership and management of TFY and recapturing Gregory's and Hoffman's ownership interests.  (ECF No. 24 at 8).  According to plaintiff, he and Borden orally agreed that they, as partners, would have equal interests in TFY.  (ECF No. 24 at 9–10).  Plaintiff drafted a revised operating agreement memorializing these orally agreed upon terms.  (ECF No. 24 at 9).  The revised operating agreement, however, was never signed and executed.  (ECF No. 24 at 12).

On March 12, 2015, Borden registered TF, listing himself as its sole officer, and TFF, listing TF as its sole officer.  (ECF No. 24 at 12–13).  Plaintiff alleges that Borden created TF and TFF to divert TFY's business opportunities thereto by entering into sham agreements, wherein TF and TFF licensed TFY's trademark rights to licensees in exchange for an initial payment and royalties.  (ECF No. 24 at 13–15).

On September 16, 2016, plaintiff filed the original complaint (ECF No. 1), which he later amended on October 28, 2016 (ECF No. 24).  In the amended complaint, plaintiff alleges, individually and on behalf of TFY, seventeen causes of action: (1) & (2) breach of loyalty against Borden and Hinton; (3) constructive fraud against Borden and Hinton; (4) breach of operating agreement against Borden, Hinton, and TFY; (5) breach of oral agreement against Borden, Hinton, and TFY; (6) declaratory judgment against Borden and Hinton; (7) & (8) accounting and unjust

1    enrichment against TF, and TFF; (9) money owed; (10) intentional interference with prospective

2    economic advantage against Borden, Hinton, TFF, and TF; (11) common law conspiracy against

3    Borden and Hinton; (12) trademark infringement under 15 U.S.C. § 1114 against TFF; (13)

4    trademark counterfeiting under 15 U.S.C. § 1116 against TFF; (14) false designation of origin and

5    unfair competition under 15 U.S.C. § 1125(a) against TFF; (15) fraud against Borden; (16)

6    dissolution of TruFusion LLC; and (17) rescission against TF and TFF.  (ECF No. 24).

7         In defendants' joint motion, defendants move to dismiss claims (2), (3), (8), (10), (12),

8    (13), (14), (16), and (17) of plaintiff's amended complaint (ECF No. 24).  (ECF No. 38).

9         On October 27, 2016, counterclaimants TFY, TF, and TFF filed a counterclaim and "third-

10    party complaint"[2] (ECF No. 19), which they later amended (ECF No. 54-1) on January 3, 2017.

11    In the amended counterclaim, counterclaimants allege four causes of action against plaintiff: (1)

12    abuse of process; (2) intentional interference with prospective economic relations; (3) conversion;

13    and (4) breach of fiduciary duty.  (ECF No. 54-1).[3]

14         In plaintiff's motion, he moves to dismiss claims (1), (2), and (4) of the amended

15    counterclaim (ECF No. 54-1).  (ECF No. 55).

16         The court will address each as it sees fit.

17    **II.**    **Legal Standard**

18         A court may dismiss a complaint for "failure to state a claim upon which relief can be

19    granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short and plain

20    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell*

21    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed

22

23    _____

24         [2] Counterclaimants' "third-party complaint" is not a proper third-party complaint.  *See*

25    Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and
complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

26         [3] Counterclaimants initially filed an amended counterclaim—titled "counterclaim and

27    third-party complaint" (ECF No. 53)—which erroneously failed to indicate that it was the first
amended counterclaim.  Subsequently, counterclaimants filed a "notice of errata" (ECF No. 54)

28    explaining the deficiency and attaching a corrected copy of their "first amended counterclaim"
(ECF No. 54-1).  Accordingly, the operative first amended counterclaim (ECF No. 54-1) is the
corrected copy attached to counterclaimants' notice of errata.

James C. Mahan
U.S. District Judge

1    factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

2    elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

3         "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550

4    U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

5    matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation

6    omitted).

7         In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply

8    when considering motions to dismiss.  First, the court must accept as true all well-pled factual

9    allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.

10   *Id.* at 678–79.  Mere recitals of the elements of a cause of action, supported only by conclusory

11   statements, do not suffice.  *Id.* at 678.

12        Second, the court must consider whether the factual allegations in the complaint allege a

13   plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint

14   alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the

15   alleged misconduct.  *Id.* at 678.

16        Where the complaint does not permit the court to infer more than the mere possibility of

17   misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief."  *Id.*

18   (internal quotation marks omitted).  When the allegations in a complaint have not crossed the line

19   from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

20        The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,

21   1216 (9th Cir. 2011).  The *Starr* court stated, in relevant part:

22        First, to be entitled to the presumption of truth, allegations in a complaint or
          counterclaim may not simply recite the elements of a cause of action, but must
23        contain sufficient allegations of underlying facts to give fair notice and to enable
          the opposing party to defend itself effectively.  Second, the factual allegations that
24        are taken as true must plausibly suggest an entitlement to relief, such that it is not
          unfair to require the opposing party to be subjected to the expense of discovery and
25        continued litigation.

26   *Id.*

27   . . .

28   . . .

James C. Mahan
U.S. District Judge                                        - 4 -

**III.    Discussion**

  **A.  Defendants' Motion to Dismiss** (ECF No. 38)

  Plaintiff's amended complaint asserts, on behalf of TFY, nine derivative claims—claims (2), (3), (8), (10), (12), (13), (14), (16), and (17)—arising from activities by Borden and Hinton that allegedly harmed TFY.  (ECF No. 24).  Defendants' motion to dismiss argues that dismissal of these nine derivative claims is proper because plaintiff failed to adequately plead demand futility and because plaintiff is not an adequate representative to sue on behalf of TFY's members.  (ECF No. 38).

  "A derivative action is an extraordinary process where courts permit 'a shareholder to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own.'"  *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (quoting *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983)); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) ("Because of the fear that shareholder derivative suits could subvert the basic principle of management control over corporate operations, courts have generally characterized shareholder derivative suits as a remedy of last resort." (quotation marks omitted)).

  "A derivative theory of recovery, whether asserted individually or on behalf of a class, is governed by Fed. R. Civ. P. 23.1."  *Lewis v. Chiles*, 719 F.2d 1044, 1050 (9th Cir. 1983).  Rule 23.1 sets forth stringent conditions for brining derivative suits.  *See Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008) ("[S]trict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors.").

> First, plaintiffs must comply with Rule 23.1's pleading requirements, including that the plaintiff "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors." Second, Rule 23.1 states that a derivative action brought by "one or more shareholders . . . to enforce a right" of a corporation "may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."

*Quinn*, 620 F.3d at 1012 (citations omitted).  In other words, to have standing, a plaintiff must be a shareholder at the time of the alleged wrongful acts and retain ownership of the stock for the duration of the lawsuit.  *See, e.g.*, *id.*; *Lewis*, 719 F.3d at 1047.

James C. Mahan
U.S. District Judge

- 5 -

1    The parties do not dispute that plaintiff owns an interest in TFY.  (*See* ECF Nos. 24 at 2;

2    38 at 13–14).  Defendants, however, allege that plaintiff also owns a 1% interest in TF.  Plaintiff

3    asserts that he never signed an operating agreement for TF or received any paperwork disclosing

4    his interest therein.  (ECF No. 24 at 12–13).

5            *1.  Demand*

6    Rule 23.1 provides that a shareholder must either demand action from the corporation's

7    directors before filing a shareholder derivative suit, or plead with particularity the reasons why

8    such demand would have been futile.  *Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014); Fed. R.

9    Civ. P. 23.1; *see also Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) ("The complaint must

10   specify such facts as the times, dates, places, benefits received, and other details of the alleged

11   fraudulent activity." (citations omitted)); Fed. R. Civ. P. 9(b) ("[A] party must state with

12   particularity the circumstances constituting fraud . . . .").

13   Here, it is undisputed that plaintiff failed to demand action from TFY prior to filing the

14   instant action.  (*See* ECF Nos. 38 at 11–14; 44 at 7).  Thus, to survive the instant motion to dismiss,

15   the amended complaint must have pleaded, with particularity, the reasons why a demand would

16   have been futile.  *See* Fed. R. Civ. P. 23.1.

17   Plaintiff argues that he adequately pleaded that a demand on TFY would be futile in light

18   of the allegations against Borden and Hinton.  (ECF No. 44 at 7–8).  Plaintiff's amended complaint

19   alleges that Borden and Hinton controlled the decision making for TFY and exercised that control

20   for their own personal interests by diverting TFY's business opportunities to TF and TFF.  (ECF

21   No. 24 at 14).  The amended complaint further alleges that any demand would have been futile as

22   it would essentially be asking Borden and Hinton to sue themselves.  (ECF No. 24 at 14–15).

23   Because TFY is incorporated in Nevada, Nevada law defines demand futility in this case.

24   *See, e.g.*, *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (holding that courts look to

25   the law of the state of incorporation to determine when demand would be futile).  Nevada courts

26   look to Delaware law for guidance on demand futility.  *Shoen v. SAC Holding Corp.*, 137 P.3d

27   1171, 1179–84 (Nev. 2006).

28

**James C. Mahan**
**U.S. District Judge**

Under Nevada law, a plaintiff must allege particularized facts demonstrating either of the following:

> (1) in those cases in which the directors approved the challenged transactions, a reasonable doubt that the directors were disinterested or that the business judgment rule otherwise protects the challenged decisions; or (2) in those cases in which the challenged transactions did not involve board action or the board of directors has changed since the transactions, a reasonable doubt that the board can impartially consider a demand.

*Arduini*, 774 F.3d at 628 (quoting *Shoen*, 137 P.3d at 1184); *accord Potter*, 546 F.3d at 1058 ("The test for proving the futility of a demand for relief is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." (internal quotation marks and citation omitted)).  "[I]n order to evaluate the demand futility claim, the court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff."  *Potter*, 546 F.3d at 1058 (quotation omitted).

Further, "a bare allegation without factual support cannot excuse demand."  *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1209 (9th Cir. 1980).  Absent self-interest or other indication of bias, mere approval or participation by directors in the alleged wrongful conduct is insufficient to establish futility.  *See id.* at 1210.  "Such bias appears where there is an allegation that the directors have participated in a transaction completely undirected to a corporate purpose."  *Id.* (internal quotation marks and citation omitted).

Here, the amended complaint has failed to allege with sufficient particularity the reasons as to why a demand would have been futile.  In particular, the amended complaint fails to allege facts with sufficient specificity to support an inference that Borden was the sole manager of TFY or that Borden exercised control over the other managers.

According to the amended complaint, on July 24, 2013, Borden, Hoffman, Gregory, Hinton, and plaintiff entered into OA regarding TFY, which provided for manager-management, giving managers the authority to act on behalf of TFY.  While plaintiff alleges that Borden and Hinton essentially controlled the decision making for TFY, it is unclear from the amended complaint whether Borden was the sole manager of TFY.  Specifically, the amended complaint

James C. Mahan
U.S. District Judge

1    merely alleges that Borden was the manager and a member of TFY and that Hinton was a member

2    and employee of TFY.  (ECF No. 24 at 17).

3         Plaintiff asserts that TFY bought out Hoffman's and Gregory's interests in TFY, but fails

4    to specify whether Hoffman and Gregory remained managers thereafter.  "[I]in the demand context

5    even proof of majority ownership of a company does not strip the directors of the presumptions of

6    independence, and that their acts have been taken in good faith and in the best interests of the

7    corporation."  *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984), *overruled on other grounds*,

8    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see also id.* at 816 ("Independence means that a

9    director's decision is based on the corporate merits of the subject before the board rather than

10   extraneous considerations or influences.").

11        Further, plaintiff's contention that any demand for TFY to take action would have been

12   futile as it would have been requesting the other members (Borden and Hinton) to sue themselves

13   similarly fails.  In *Aronson*, the court rejected a similar argument and noted that such argument has

14   been made to and dismissed by other courts as well.  473 A.2d at 818; *see also id.* at 817–18

15   (rejecting the argument that demand is necessarily futile because the directors would have to sue

16   themselves or they approved the underlying transaction).

17        In light of the foregoing, the amended complaint has failed to plead with requisite

18   specificity the reasons as to demand futility.

19                    *2.  Adequate Representative*

20        Defendants argue that dismissal of the nine derivative claims in plaintiff's amended

21   complaint is proper pursuant to Rule 23.1 because plaintiff does not fairly and adequately represent

22   the interests of the other members of TFY.  (ECF No. 38).  In particular, defendants contend that

23   certification as a derivative action is inappropriate because plaintiff's pursued claims are adverse

24   to every member of the class for which he seeks to represent.  (ECF No. 38 at 7–8).

25        However, plaintiff has failed to adequately plead demand futility, and the court need not

26   address whether plaintiff is an adequate representative.

27

28

**James C. Mahan**
**U.S. District Judge**

1    Accordingly, the court will grant defendants' motion to dismiss (ECF No. 38) and the nine

2    derivative claims alleged on behalf of TFY—specifically, claims (2), (3), (8), (10), (12), (13), (14),

3    (16), and (17) (ECF No. 24)—will be dismissed without prejudice.

4    **B.  Plaintiff's Motion to Dismiss** (ECF No. 55)

5    In the first amended counterclaim, counterclaimants TFY, TF, and TFF allege four causes

6    of action against plaintiff: (1) abuse of process; (2) intentional interference with prospective

7    economic relations; (3) conversion; and (4) breach of fiduciary duty.  (ECF No. 54-1).

8    In his motion, plaintiff moves to dismiss claims (1), (2), and (4) of the counterclaim.  (ECF

9    No. 55).

10    *1.  Abuse of Process*

11    Under Nevada law, an abuse of process claim requires two elements: "(1) an ulterior

12    purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of

13    the legal process not proper in the regular conduct of the proceeding."  *LaMantia v. Redisi*, 38 P.3d

14    877, 879 (Nev. 2002) (quoting *Posadas v. City of Reno*, 851 P.2d 438, 444–45 (Nev. 1993))

15    (internal quotation marks omitted).

16    Counterclaimants allege that plaintiff initiated the underlying suit to exert leverage against

17    Borden and to increase plaintiff's membership interest in TFY.  (ECF No. 54-1 at 4–7).  In

18    particular, counterclaimants allege that Borden and plaintiff spent over two years negotiating to

19    increase plaintiff's membership interest in TFY.  Counterclaimants further allege that after Borden

20    rejected plaintiff's counteroffers, plaintiff filed the instant suit claiming that Borden is obligated

21    to sell plaintiff sufficient amounts of his membership interest in TFY to equalize their membership

22    interests at 47% each.  (ECF No. 54-1 at 5).

23    Plaintiff argues that merely filing and pursing a lawsuit does not constitute abuse of

24    process.  (ECF No. 55 at 6–7).  The court agrees.  "The tort requires a willful act that would not

25    be proper in the regular conduct of the proceeding, and filing a complaint does not meet this

26    requirement."  *Land Baron Inv. v. Bonnie Springs Family LP*, 356 P.3d 511, 520 (Nev.), *reh'g*

27    *denied* (Nov. 24, 2015), *reconsideration en banc denied* (Jan. 22, 2016) (internal quotation marks

28

**James C. Mahan**
**U.S. District Judge**

- 9 -

1   and citation omitted).  While counterclaimants allege various ulterior motives, they fail to allege a

2   willful act other than the filing of the instant suit.

3          Accordingly, the court will grant plaintiff's motion to dismiss without prejudice as to this

4   claim.

### 2.  Intentional Interference with Prospective Economic Relations

6          The amended counterclaim alleges that TFY, as franchisor, offers franchisees the

7   opportunity to operate as TruFusion Wellness Centers ("TFWCs").   (ECF No. 54-1 at 4).

8   Counterclaimants assert that they had prospective economic relations with franchisees of TFWCs

9   and that TF had prospective economic relations with RS Fit.   (ECF No. 54-1 at 7).

10  Counterclaimants allege that plaintiff knew of these relationships and intended to interfere with

11  them by filing and pursing the instant action.  (ECF No. 54-1 at 7–8).

12         To establish a claim of wrongful interference with a prospective economic advantage, a

13  plaintiff must show five elements:

14         1) a prospective contractual relationship between the plaintiff and a third party; 2)
           the defendant's knowledge of this prospective relationship; 3) the intent to harm
15         the plaintiff by preventing the relationship; 4) the absence of privilege or
           justification by the defendant; and, 5) actual harm to the plaintiff as a result of the
16         defendant's conduct.

17  *Leavitt v. Leisure Sports Inc.*, 734 P.2d 1221, 1225–26 (Nev. 1987); *see also In re Amerco*

18  *Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011).

19         Here, counterclaimants fail to allege actual harm as a result of plaintiff's conduct.  Rather,

20  counterclaimants merely assert that plaintiff's actions "will be a substantial factor in disrupting

21  and harming the benefits that would otherwise inure to TFY."  (ECF No. 54-1 at 7).  Moreover,

22  the amended counterclaim fails to set forth sufficient facts to support the assertion that plaintiff

23  intended to harm counterclaimants.

24         Accordingly, the court will grant plaintiff's motion to dismiss without prejudice as to this

25  claim.

### 3.  Breach of Fiduciary Duty

27         Counterclaimants allege that plaintiff was a de facto officer of TFY and owed fiduciary

28  duties to TFY.  (ECF No. 54-1 at 9).  Counterclaimants further allege that plaintiff failed to act in

**James C. Mahan**
**U.S. District Judge**

1    the best interests of TFY by purchasing speakers unsuitable for humid conditions so as to constitute

2    corporate waste.  (ECF No. 54-1 at 9).

3         "[B]reach of fiduciary duty seeks damages for injuries that result from the tortious conduct

4    of one who owes a duty to another by virtue of the fiduciary relationship."  *Stalk v. Mushkin*, 199

5    P.3d 838, 843 (Nev. 2009).  "In Nevada, a claim for breach of fiduciary duty has three elements:

6    (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the

7    damages."  *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009).

8         Here, counterclaimants have failed to sufficiently allege that purchasing unsuitable

9    speakers constitutes a breach of a fiduciary duty.  Further, the amended counterclaim fails to allege

10   facts sufficient to support that plaintiff was a "de facto officer" rather than merely a member.

11        Accordingly, the court will grant plaintiff's motion to dismiss without prejudice as to this

12   claim.

13   **IV.   Conclusion**

14        Based on the aforementioned, the court will grant defendants' motion to dismiss as to the

15   nine derivative claims alleged on behalf of TFY—specifically, claims (2), (3), (8), (10), (12), (13),

16   (14), (16), and (17) of the amended complaint—without prejudice.  Further, the court will grant

17   plaintiff's motion to dismiss as to claims (1), (2), and (4) of the amended counterclaim without

18   prejudice.

19        Accordingly,

20        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to

21   dismiss (ECF No. 38) be, and the same hereby is, GRANTED consistent with the foregoing.

22        IT IS FURTHER ORDERED that plaintiff's motion to dismiss (ECF No. 55) be, and the

23   same hereby is, GRANTED consistent with the foregoing.

24        IT IS FURTHER ORDERED that defendants' motion to dismiss (ECF No. 17) be, and the

25   same hereby is, DENIED as moot.

26   . . .

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

1         IT IS FURTHER ORDERED that plaintiff's and third-party defendants' motion to dismiss

2    (ECF No. 41) be, and the same hereby is, DENIED as moot.

3         DATED March 28, 2017.

4    _____
     UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge