# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SETH MANHEIMER, | Case No. 2:16-CV-2186 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| TRUFUSION YOGA, LLC, et al., | |
| Defendant(s). | |
| AND RELATED COUNTERCLAIM | |

Presently before the court are defendants/counterclaimants TruFusion Yoga, LLC ("TFY"), TruFusion LLC ("TruFusion"), TruFusion Franchising LLC ("TFF"), Michael Borden ("Borden"), and Martin Hinton's ("Hinton"), (collectively "defendants") two motions *in limine*. (ECF Nos. 84, 85). Defendants subsequently filed an amended motion *in limine* (ECF No. 90), replacing their second motion *in limine* (ECF No. 85). Plaintiff/counter-defendant Seth Manheimer ("Manheimer") filed responses. (ECF Nos. 97, 98).

Also before the court are Manheimer's three motions *in limine*. (ECF Nos. 86, 87, 89). Defendants filed responses. (ECF Nos. 94, 95, 96).

Also before the court is the parties' stipulation to exclude and limit certain proposed exhibits and evidence. (ECF No. 93).

**I.  Facts**

This case arises from Manheimer's claim that he was wrongfully deprived of a 47–49% ownership stake in TFY and/or Trufusion, leaving him with a 1% interest. (ECF No. 24).

**James C. Mahan**
**U.S. District Judge**

Manheimer's involvement with defendants began in June 2013, when he purchased a 1% interest in TFY, a company that provides fitness classes in the Las Vegas area. *Id*. At the time of Manheimer's purchase, Steven Gregory ("Gregory"), Judiah Hoffman ("Hoffman"), Hinton, and Borden were the other owners of TFY. *Id*. In July 2013, Borden, Hoffman, Gregory, Hinton, and Manheimer entered into an operating agreement, which gave managers the authority to act on behalf of TFY. *Id*. Manheimer served as a managing member. *Id*.

Manheimer alleges that during March through May of 2014, TFY bought Gregory and Hoffman's interests because they were harming the company. *Id*. Subsequently, Manheimer and Borden allegedly entered into an oral agreement that they, as partners, would have equal interests in TFY. *Id*. Manheimer drafted a revised operating agreement memorializing these orally agreed upon terms. *Id*. The revised operating agreement, however, was never signed and executed. *Id*. Nevertheless, Manheimer continued to contribute to TFY, which was eventually awarded "Best of Las Vegas" by the Las Vegas Review Journal. *Id*.

On March 12, 2015, Borden registered TruFusion, listing himself as its sole officer, and TFF, listing TruFusion as its sole officer. *Id*. Manheimer alleges that Borden created TruFusion and TFF to divert TFY's business opportunities thereto by entering into sham agreements, wherein TruFusion and TFF licensed TFY's trademark rights to licensees in exchange for an initial payment and royalties. *Id*. Defendants, however, acknowledge that Manheimer's 1% ownership interest in TFY converted to a 1% ownership interest in TruFusion. (ECF No. 90).

On September 16, 2016, Manheimer initiated this lawsuit. (ECF No. 1). Throughout various pleadings, Manheimer and defendants brought causes of action against each other. (ECF Nos. 1, 19, 24, 38, 54-1). Manheimer's current causes of action, individually and on behalf of TFY, are breach of loyalty against Borden and Hinton; breach of operating agreement against Borden, Hinton, and TFY; breach of oral agreement against Borden, Hinton, and TFY; declaratory judgment against Borden and Hinton; accounting and unjust enrichment against TruFusion, and TFF; money owed; common law conspiracy against Borden and Hinton; and fraud against Borden. (ECF Nos. 1, 58). Defendants' only remaining counterclaim is conversion. (ECF Nos. 54-1, 58).

Now, the parties have filed several motions in *limine*.

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991) (affirming district court's ruling *in limine* that prosecution could admit impeachment evidence under Federal Rule of Evidence 609).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

"Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. Apr. 18, 2013).

. . .

. . .

. . .

### III. Discussion

*a. Defendants' motion in limine 1* (ECF No. 84)

Defendants' motion *in limine* 1 seeks to exclude the QED Report on Venture Capital Financial Analysis ("QED Report") as inadmissible hearsay. (ECF No. 84). The QED Report is a document that discusses the rate of return that venture capital investors look for depending on a company's stage of development. *Id*. Manheimer's expert witness, Robert R. Trout ("Trout"), produced a valuation report that includes the QED Report as an exhibit. *Id*. Trout uses the QED Report to refute defendants' expert, Jason Forsyth ("Forsyth"), who relied on the QED Report. (ECF No. 97).

While defendants repeatedly conclude that the QED Report is hearsay they fail to adequately support or explain why that is the case. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. The truth of the matter asserted by the QED Report is that venture capitalist investors expect particular rates of return for companies at different stages of development. *See* (ECF No. 84). However, Trout has not brought forth the QED Report to prove any claim regarding rates of return but instead wishes to use the report to undermine Forsyth's credibility. (ECF No. 97). Trout, who assisted in drafting the QED Report, seeks to highlight the obsolete nature of the report and thus Forsyth's misplaced reliance therein. *Id.* Accordingly, the QED Report is admissible for impeachment purposes.

The QED Report is also admissible to prove the truth of the matter asserted because it is an ancient document. Under Rule 803(16), a statement in a document that is at least 20 years old and whose authenticity is established is admissible hearsay. Fed. R. Evid. 803(16). Here, the QED Report was prepared thirty-one years ago, in 1987. (ECF No. 97). Defendants have not disputed the document's authenticity and, as the document is readily available to the general public, the court sees no reason to doubt its authenticity. *See* (ECF Nos. 84, 97). Accordingly, the QED Report is also admissible for substantive purposes.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

*b. Defendants' amended motion in limine 2* (ECF No. 90)

Defendants' amended motion *in limine* 2 seeks to exclude the engagement agreements for all experts retained by both parties, including proposed exhibits 329 and 330. (ECF No. 90). Defendants argue that these agreements are irrelevant and needlessly cumulative. *Id*.

Under Rule 401, evidence is relevant if it has a tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Any evidence that is not relevant under Rule 401 is inadmissible. *Id*. at 402. When evidence is relevant, it may still be excluded when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. " Fed. R. Evid. 403.

Here, Manheimer and defendants have retained expert witnesses to offer valuation opinions. (ECF No. 90). Defendants' have multiple engagement agreements with Forsyth of FFG Valuations. *Id*. These engagement agreements concern previous services in rendering a valuation for new investors as well as Forsyth's retainer as an expert witness in this matter. *Id*.

Defendants argue that the engagement agreements do not have a tendency to make a fact more or less probable since the parties can stipulate to the scope of services and rates of hourly pay. *Id.* Manheimer responds that Forsyth's engagement agreements with defendants are "particularly pertinent" because they show a "preexisting, ongoing economic relationship" between the two parties. (ECF No. 98). Manheimer continues that the agreements show the scope of Forsyth's work and the economically motivated nature of his testimony. *Id.*

The engagement agreements are relevant because then tend to show economic motivation and financial bias. A showing of bias makes it less probable that an expert is providing an accurate valuation. Accordingly, the court will admit the engagement agreements.

*c. Manheimer's motion in limine 1* (ECF No. 89)

Manheimer's motion *in limine* 1 seeks to exclude from evidence the Membership Interest Purchase Agreement ("MIPA") and MIPA related communications. (ECF No. 89). Manheimer argues that these documents constitute inadmissible settlement communications and that they are inherently confusing. *Id.*

Conduct, statements, compromise offers, and settlements made during compromise negotiations are not admissible to prove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction. Fed. R. Evid. 408(a). However, in civil cases such settlement related evidence is admissible to show a witness's prejudice or to negate a contention of undue delay. *Id.* at 408(b). The purpose of Rule 408's exclusion of settlement related evidence is to encourage the compromise and resolution of existing disputes. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987). This exclusion applies to genuine compromise negotiations and will not bar evidence simply because one party call its communication with the other party a "settlement offer." *Id.*

Here, Manheimer specifies ten (10) documents that it claims to be settlement related evidence. (ECF No. 89). These documents include emails, signed agreements, letters, and a voicemail. *Id.* The central topic of these records is Manheimer and Borden attempting to arrange a buyout of Manheimer's interest. *Id.* These communications eventually boiled down to a valuation of $85,000: $55,000 for loans owed to Manheimer and $30,000 for his 1% interest. *Id.*; (ECF No. 94). Nothing in these documents suggests an attempt to settle an existing dispute, but rather ongoing business activities relating to a purchase of Manheimer's ownership in TFY. (ECF No. 89). Further, the documents that Manheimer is attempting to exclude are evidence of the very business dealings that Manheimer has put into dispute in his amended complaint. *See* (ECF No. 24). It is simply not possible for the events giving rise to the dispute to also be the compromise negotiation of the same dispute. Accordingly, the court holds that Rule 408 does not bar the documents at issue as they are not settlement related evidence.

Manheimer's Rule 403 argument is similarly misguided. The documents at issue are a record of the very events in dispute, giving them significant probative value. Though the purchase agreement includes a low valuation of Manheimer's interest, by no means does it present unfair prejudice because it pertains to arm-length dealings regarding a central issue in this matter. Further, both parties will have an opportunity at trial to explain this low valuation. Accordingly, the court holds that the MIPA and MIPA related communications are admissible.

. . .

*d. Manheimer's motion in limine 2* (ECF No. 87)

Manheimer's motion *in limine* 2 seeks to exclude over a thousand pages of text messages or, in the alternative, to redact offensive and personal materials from the text messages. (ECF No. 87). Manheimer argues that the text message should be excluded for being irrelevant and unfairly prejudicial.

Manheimer claims that the text messages largely consist of personal information, jokes, and pictures, which have nothing to do with the matter in dispute. (ECF No. 87). Manheimer continues that the 1350 pages of text messages contain prejudicial content including "vulgar language, ethnic humor, scatological and bodily humor, jokes about women and sex, risqué photographs, and controversial political humor." (ECF No. 87). Defendants argue that the purpose of these text messages is to show a continuous friendly relationship between Borden and Manheimer, which tends to refute Manheimer's account of his antagonistic relationship with Borden prior to the meeting where he was promised a greater interest in the company. (ECF No. 96). Defendants also argue that the text messages include evidence of Manheimer funneling non-public information from TFY and an admission that he has an ownership interest below $55,000. *Id*.

Before the court is a large repository of text messages which, almost inevitably, contains evidence that is relevant to pertinent issues such as Manheimer's stake in the company and refuting Manheimer's account of his business relations with Borden. The court, however, is in no position to individually review thousands of text messages. The parties must reduce these records to a manageable quantity so that the court and the parties can effectively handle the evidence. Furthermore, it appears that some of the text messages contain remarkably prejudicial content. The court will not allow offensive or otherwise prejudicial text messages to contaminate the jury as it will undermine their ability to fulfill the profound responsibility that rests on their shoulders. Accordingly, the court holds that the text messages are admissible so long as they are reduced to a manageable quantity and include appropriate redactions.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

*e. Manheimer's motion in limine 3* (ECF No. 86)

Manheimer's motion *in limine* 3 seeks to exclude from evidence Set and Flow Yoga, LLC's employment agreements with Rachel Hall ("Hall") and Eddie Guera ("Guera"). (ECF No. 86). Manheimer argues that the employment agreements are irrelevant and do not survive Rule 403 balancing. *Id*.

After Manheimer was no longer working at TFY, he went to Los Angeles, California and created Set and Flow Yoga, LLC ("Set and Flow Yoga"). (ECF No. 86). He hired Hall and Guera, who formerly worked at TFY, and executed employment agreements that included non-competition provisions. (ECF Nos. 86, 95). Manheimer argues that these agreements are irrelevant because they pertain to an entirely different business and that they would unfairly prejudice the jury by suggesting that he acted improperly when he hired Hall and Guera. (ECF No. 86). Manheimer also argues that the employment agreements would cause the jury to believe that Hall and Guera's employment is at issue. *Id*. Defendants argue that the employment agreements are relevant because they refute Manheimer's claim that defendants were unreasonable in demanding Manheimer to agree to a non-competition provision because he demanded the very same terms with his own employees. (ECF No. 96). Defendants also argue that the agreements are not prejudicial because they pertain to Manheimer's duty of loyalty toward TFY. *Id*.

A central issue in this case is whether defendants were unreasonable in removing Manheimer from TFY. (ECF No. 24). One of the chief reasons for Manheimer's removal was his failure to agree to a non-competition provision. (ECF No. 95). These employment agreements tend to show that it is reasonable to require a non-competition provision and that Manheimer considers such provision so important as to include them in Set and Flow Yoga's employment agreements. Though Manheimer alleges that admission of these agreements exposes the jury to Rule 403 dangers, the court does not see how these dangers substantially outweigh probative value. Manheimer claims that he was free to create his own business and that Hall and Guera's employment is not at issue. (ECF No. 86). If defendants use the agreements at trial to suggest otherwise, Manheimer will have the opportunity to clarify the issues at trial and explain why he was within his rights to open Set and Flow Yoga. The court recognizes that Manheimer's concerns

James C. Mahan
U.S. District Judge

are legitimate, but the present 403 dangers are not so great as to substantially outweigh the probative value of the employment agreements. Accordingly, the court holds that the employment agreements are admissible.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED that defendants' motion *in limine* 1 (ECF No. 84) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motion *in limine* 2 (ECF No. 85) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that defendants' amended motion *in limine* 2 (ECF No. 90) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Manheimer's motion *in limine* 1 (ECF No. 89) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Manheimer's motion *in limine* 2 (ECF No. 87) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Manheimer's motion *in limine* 3 (ECF No. 86) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the stipulation to exclude and limit certain proposed exhibits and evidence (ECF No. 93) be, and the same hereby is, GRANTED.

DATED August 8, 2018.

UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 9 -